UNITED DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DAVID ANDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:05CV00186 CDP (AGF) |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff David Anderson's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income under Title XVI of the Act, id. §§ 1381-1383f. The action was referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b) for recommended disposition. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

Plaintiff, who was born on March 6, 1955, applied for benefits on November 6, 2003, claiming a disability onset date of August 1, 2002, due to fatigue, blacking out, shortness of breath, heart and lung problems, left chest pain, and lower back pain. Tr. at 82, 87. After his application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on

February 17, 2005, at which Plaintiff was represented by counsel. On July 2, 2005, the ALJ issued a decision that Plaintiff was not disabled as defined by the Act. The Appeals Council of the Social Security Administration denied Plaintiff's request for review on September 23, 2005. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility; failed to analyze the combined effects of Plaintiff's exertional and nonexertional impairments; failed to articulate reasons for rejecting evidence favorable to Plaintiff; and failed to inquire, at the hearing, into the relevant facts. Plaintiff also argues that the ALJ erred in relying upon the Medical-Vocational Guidelines ("Guidelines"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, to determine that Plaintiff was not disabled, without obtaining the testimony of a vocational expert ("VE") to identify specific jobs that Plaintiff could perform.

## BACKGROUND

### Work Record

Plaintiff's earnings from 1971 through 2002 were sparse and sporadic with the exception of the last five years, 1998 through 2002, when he worked as a long-haul truck driver and earned between approximately $20,000 to $25,000 each year. Tr. at 54, 87. On his benefits application forms, Plaintiff noted that his driver's licence had been suspended due to driving while intoxicated, and that no one would hire him since he

2

could pass out at anytime.  Tr. at 85, 87.  As of January 2, 2004, his licence was still suspended.  Tr. at 81.

**<u>Medical Record</u>**

The medical record includes four pages of unidentified hand-written notes with entries dated from August 1, 1985, to April 15, 2002.  The Commissioner's index identifies these notes as from the Samuel Medical Clinic.  An entry dated November 26, 1999, reported acute bronchitis and acute lower back pain.  The notes from May 5, 2000, and December 6, 2000, reported that Plaintiff had acute low back pain.  On January 26, 2001, Plaintiff was diagnosed with an acute respiratory infection.  On March 22, 2002, it was noted that Plaintiff had a cough and difficulty breathing.  The April 15, 2002 entry noted that Plaintiff complained of feeling run down and of swelling of his legs.  Examination showed a regular heart rate and rhythm and no rales in the lungs.  Tr. at 99-102.

Meanwhile, on October 23, 1989, Plaintiff visited a chiropractic center with complaints of low back pain and hip pain and was diagnosed with subluxations at L4-L5 complicated by inflamation, muscle spasm, and hip pain.  X-rays taken on March 12, 1996, revealed spurs prominent at L3-L4 regions and osteophyte formation at T9-T10 and T10-T11 regions.  Plaintiff was treated periodically at the center with spinal manipulation for relief of symptoms, but not correction.  Tr. at 157.

On June 23, 2003, R. Musser, D.O., examined Plaintiff upon referral by the state disability agency.  Dr. Musser diagnosed syncopal episodes while driving, of unknown

3

etiology, and chronic low back pain. He noted that Plaintiff was taking no medications. Dr. Musser checked a box on the disability evaluation form indicating his opinion that Plaintiff had a disability which prevented him from engaging in employment, and that the disability was expected to last 6 to 12 months. Dr. Musser recommended further diagnostic testing. Tr. at 114-15.

On October 13, 2003, Steven Mellies, D.O., examined Plaintiff with regard to his claim of passing-out spells. Dr. Mellies noted that according to Plaintiff's account, these spells occurred over a two-to-three month period about one and a half years earlier, with Plaintiff reporting that he had experienced four episodes of suddenly blacking out while driving an 18-wheeler truck. There were never any witnesses and Plaintiff never lost control of the truck, leading Dr. Mellies to infer that the spells were brief. Plaintiff also complained about lightheadedness when he rose quickly from a chair. Dr. Mellies noted that Plaintiff told him that he did not intend to return to truck driving, but did not give Dr. Mellies a clear reason why he no longer drove. Dr. Mellies also noted that Plaintiff denied a history of hypertension, seizures, blackout spells, diabetes, or heart disease. Dr. Mellies opined that the alleged blackout spells could possibly be partial seizures and that the possibility of a brief cardiac arrhythmia had to be considered. He added that as the spells had not occurred for over a year, it might be difficult to find an exact etiology. Dr. Mellies also noted that Plaintiff was smoking one pack of cigarettes a day. Tr. at 118-19.

An electroencephalogram (EEG) and an electrocardiogram (ECG) were conducted on November 13, 2003, upon referral by Dr. Mellies. The EEG was normal during both

4

wakefulness and drowsiness. The report noted that during the recording, Plaintiff stated at least once that he felt like he was going to fall, but that no abnormal activity was detected during that period of time. Tr. at 116. The ECG was considered abnormal, showing normal sinus rhythm, but a left atrial enlargement. Tr. at 117.

On the Disability Appeal Report completed on March 8, 2004, Plaintiff left blank the section asking for a listing of medications he was taking. Tr. at 73. On March 18, 2004, Plaintiff saw a urologist for a growth on a testicle, which proved not to be problematic. The urologist noted that Plaintiff smoked a pack of cigarettes a day, and that he reported a history of high blood pressure, which on that day was recorded as 150/80. Tr. at 129-30. On March 25, 2004, Plaintiff was seen at a clinic, with complaints of shortness of breath, worse on some days. Jim Wilkerson, M.D., diagnosed chronic obstructive pulmonary disease ("COPD") and chronic bronchitis, and prescribed use of an inhaler on a trial basis. Tr. at 125-26. Dr. Wilkerson saw Plaintiff again on April 1, 2004, noted Plaintiff's statement that the inhaler was helping, and advised Plaintiff to stop smoking. Tr. at 123-24.

The record includes three pages of largely illegible treatment notes, apparently those of Chul Kim, M.D., with entries dated December 16, 2004, January 1, 2005, March 1, 2005, April 1, 2005, and May 6, 2005. Tr. at 161-64. An EEG and a CT scan of Plaintiff's head ordered by Dr. Kim and conducted on February 22, 2005, were both

normal. Tr. at 159,[1] 160. In a note dated June 10, 2005, Dr. Kim wrote that Plaintiff had continuous back pain and that a lumbar spine x-ray that day showed degenerative disc disease with almost complete loss of disc space at the L4-L5 joint and degenerative disc disease at the L3-L4 joint. Tr. at 166.[2]

**Evidentiary Hearing**

At the February 17, 2005 evidentiary hearing, Plaintiff was represented by counsel, who conducted the examination of Plaintiff. Plaintiff testified that he was 49 years old, that he had a tenth-grade education, that he was a truck driver by trade, and that he lived with his father. He testified that he quit his last job as a truck driver in August 2000 because his high blood pressure made him feel lightheaded and because his employer failed to get him home every 30 days as had been promised. Plaintiff further testified that his back bothered him "a lot" and that recent tests to his right kidney, plus damage from a previous motorcycle accident, made it hard for him to sit for any length of time, which, coupled with his high blood pressure, made him an unsafe worker. He testified that after a lung collapsed in 1993 when a horse fell on him, he quit smoking for two years, but then started again. Tr. at 170-72.

---

[1] The EEG report notes that the patient was a 72 year old male. Plaintiff's name and correct date of birth appear on the report and the Court assumes that the report does in fact relate to Plaintiff and not to another David Anderson.

[2] A significant portion of the medical record before the Court relates to a June 11, 2004 surgical procedure, without complications, for a benign epididymis cyst. Tr. at 127-56.

Plaintiff stated that he felt pain through his pelvis down toward the inside of his knee, as well as in his lower back. He described the pain as a generally numbing pain, but sharp if he made any quick moves. He rated his back pain as a continuous four to five on a scale of one to ten, with ten being the highest level of pain. Plaintiff testified that the medications he took did not help him, and that he was hopeful the kidney tests would show the cause of his pain and lead to some relief. He stated that the pain would prevent him from focusing on a job and stated that his pain together with his lightheadedness and high blood pressure made him an unsafe worker. Plaintiff testified that his feet would swell due to his high blood pressure, causing discomfort. He testified that he could walk about 150 feet before needing to rest for a short time and continuing on; could sit in one place for about one-half hour; and could stand in one place for one-half to one hour; and could pick up and carry about 50 pounds, but not regularly during the course of a day. Plaintiff also testified that he had trouble pushing and pulling things, due to his pain and exhaustion. Tr. at 173-75.

When asked about his daily activities, Plaintiff testified that he got up at 6:00 or 7:00 a.m. and went to bed between 11:00 p.m. and 12:00 a.m. He spent his time watching TV and had to nap for about one-half hour to 45 minutes three or four times a day due to lightheadedness from his high blood pressure. Plaintiff testified that he did not go to any clubs or to church, would occasionally walk to a fish pond (of unspecified distance), and in warm weather would go fishing two or three times a week. He stated that he no longer did paint and body work on vehicles due to his lightheadedness and the

adverse effect the chemicals would have on his lungs. He stated that he did not need assistance with breathing, although at one point he took medication to clear his lungs. Plaintiff also stated that since leaving his trucking job, he did not do housework or any yard work. Tr. at 176-80.

**<u>ALJ's Decision</u>**

The ALJ found that Plaintiff had degenerative disc disease of the lumbar spine, but that there was no medical evidence of an impairment or combination of impairments so severe as to meet or medically equal the requirements for any of the presumptively-disabling impairments listed in the Commissioner's regulations. The ALJ turned to consider whether Plaintiff had the residual functional capacity ("RFC") to perform his past work as a truck driver, and if not, to perform other work. The ALJ noted the relevant factors in assessing the credibility of Plaintiff's subjective complaints, as set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984), and stated that if all of Plaintiff's allegations were fully credible, Plaintiff would be unable to work.

The ALJ then addressed each of Plaintiff's alleged impairments. The ALJ first found that Plaintiff did not have a medically determinable impairment with regard to blackout spells. The ALJ noted that no cause had ever been found for the alleged blackouts. The ALJ also noted that Plaintiff's licence had been suspended when he was seen by Dr. Mellies and that Plaintiff testified at the hearing that he left his truck-driving job because the company he was working for did not get him home every 30 days. The ALJ accordingly surmised that these were the true reasons Plaintiff left his job, and not

8

because of blackout spells. The ALJ stated that it appeared that the five alleged spells reported to Dr. Kim in 2005[3] were the same incidents reported to Dr. Mellies in October 2003, so that such spells had not occurred for a period of nearly three years. Tr. at 12-13.

With regard to Plaintiff's alleged shortness of breath and lung problems, the ALJ noted that there were "suggestions throughout the record" that Plaintiff's shortness of breath might be related to his smoking, and that Plaintiff continued to smoke despite medical advice to stop. The ALJ noted that there were no laboratory tests to establish a lung impairment and he pointed to Plaintiff's testimony at the hearing that he did not need assistance in breathing. The ALJ summarily rejected Plaintiff's claim on his application that he had heart problems, stating that there was no evidence in the record that Plaintiff ever complained of a heart condition or that he was ever treated for such. Tr. at 13.

Returning to Plaintiff's allegations of low back pain, the ALJ noted the absence of evidence that Plaintiff had ever been prescribed physical therapy or "work hardening" for this problem or that his degenerative disc disease caused significant limitations or sensory, reflex, or motor difficulties. The ALJ also noted that Plaintiff was not on chronic pain medication and went for long periods during which he took no prescription medication for his back pain. The ALJ also stated that no treating or examining physician

---

[3] The Court sees no direct evidence in the record that Plaintiff complained to Dr. Kim about blackout spells, but as noted above, the head CT conducted on February 22, 2005, was ordered by Dr. Kim. Tr. at 160.

9

ever expressed an opinion that Plaintiff was incapable of performing work activity. Tr. at 13.

The ALJ stated that he did not find Plaintiff to be a credible witness. The ALJ first pointed to the inconsistency between Plaintiff's statement that he was unable to work due to blackouts preventing him from driving with the evidence that the only reason Plaintiff stopped driving was apparently because his driver's licence was suspended. The ALJ noted that the blackouts were never witnessed by anyone and were so short in nature that Plaintiff never lost control of his truck. The ALJ then pointed out that although Plaintiff testified to significant walking, standing, and sitting limitations and to the need to nap several times a day, there was no evidence that Plaintiff ever expressed these complaints to any of his treating physicians. The ALJ again noted the absence of any doctor's opinion that Plaintiff was unable to work. The ALJ found that Plaintiff's earnings record, showing only 11 years of substantial gainful activity, undermined Plaintiff's credibility with respect to his allegations of disabling symptoms and his motivation to work.

In sum, the ALJ concluded that Plaintiff's "allegations of symptoms precluding all types of work are not consistent with the evidence as a whole and are not credible." Tr. at 14. Giving Plaintiff the "marked benefit of the doubt with regard to his alleged back pain," the ALJ found that Plaintiff had the RFC to perform the full range of light work,[4]

---

[4] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting (continued...)

but that because Plaintiff's driver's license had been suspended, Plaintiff was unable to perform his past relevant work.[5] Id. The ALJ then stated that based upon Plaintiff's age and limited education, Rules 202.18 (applicable to individuals aged 18 through 49) and 202.11 (applicable to individuals aged 50 to 54) of the Guidelines directed a finding of not disabled. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Act. Id.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must affirm the Commissioner's decision "so long as it conforms to the law and is supported by substantial evidence on the record as a whole." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). This "entails 'a more scrutinizing analysis'" than the substantial evidence

---

[4](...continued)
no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls.

Social Security Ruling 83-10 elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. SSR 83-10, 1983 WL 31251, at *6 (1983).

[5] The Court notes that truck driver is classified as medium work in the Dictionary of Occupational Titles, DOT § 904.383-010.

11

standard. Id. (quoting Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989)). The court's review "'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision'"; the court must "'also take into account whatever in the record fairly detracts from that decision.'" Id. (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). Reversal is not warranted, however, "'merely because substantial evidence would have supported an opposite decision.'" Id. (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir.1995)).

To be entitled to benefits, a claimant must demonstrate an inability to engage in any substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Work which exists in the national economy "means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. § 423 (d)(2)(A). Both the impairment and the inability to engage in substantial gainful employment must last or be expected to last for not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 217-22 (2002).

The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment

is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the impairments listed in Appendix I. If the claimant's impairment is equivalent to a listed impairment, the claimant is conclusively presumed to be disabled. Otherwise, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work, if any. If the claimant has past relevant work and is able to perform it, he is not disabled. If he cannot perform his past relevant work or has no past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors -- age, education, and work experience.

If a claimant can perform the full range of work in a particular category of work (very heavy, heavy, medium, light, and sedentary) listed in the Commissioner's regulations, the Commissioner may carry this burden by referring to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. Where a claimant cannot perform the full range of work in a particular category listed in the Guidelines due to nonexertional impairments such as

13

pain, the ALJ cannot carry this burden by relying exclusively on the Guidelines, but must consider testimony of a VE. Here the ALJ decided at step five that, based upon the Guidelines, there were jobs in the economy that Plaintiff could perform.

**<u>ALJ's Evaluation of Plaintiff's Credibility</u>**

Plaintiff first asserts that the ALJ incorrectly concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Plaintiff does not identify any listing which Plaintiff meets, nor does the record support Plaintiff's assertion. Plaintiff next argues that his exertional and nonexertional impairments significantly diminished his RFC, and therefore, the ALJ erred in relying on the Guidelines to conclude that Plaintiff was disabled, without obtaining the testimony of a VE. This argument is linked to Plaintiff's argument that the ALJ improperly evaluated Plaintiff's credibility. Plaintiff argues that the ALJ improperly supported the ALJ's rejection of Plaintiff's subjective allegations by looking only at the lack of corroborating medical evidence, and failed to analyze the combined effects of Plaintiff's impairments and articulate reasons for rejecting evidence favorable to Plaintiff.

In <u>Polaski v. Heckler</u>, the Eighth Circuit held that the "absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." <u>Polaski</u>, 739 F.2d at 1322. The Court explained that in evaluating a claimant's subjective complaints, an ALJ must also consider observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily

14

activities; (2) the frequency, duration, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Id. The ALJ is not required to discuss each Polaski factor in a methodical fashion, as long as the analytic framework is recognized and considered. Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to [his] judgment even if every factor is not discussed in depth.").

Here, the ALJ noted several reasons for discrediting Plaintiff's allegations of disabling impairments, including Plaintiff's poor work record, his failure to take prescription pain medication for any significant duration of time, the lack of medical evidence confirming a problem with blacking out, and Plaintiff's failure to stop smoking despite medical advice that he do so. These reasons are supported by the record and are valid bases for discrediting allegations of disabling symptoms. See, e.g., Thomas v. Barnhart, 130 Fed. Appx. 62, 64 (8th Cir. 2005) (holding that lack of medical evidence supporting the plaintiff's allegations, lack of aggressive treatment for the plaintiff's alleged pain, and the plaintiff's poor work record supported the ALJ's decision to discredit the plaintiff's complaints of disabling pain); Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004) (holding that the plaintiff's allegations were properly discredited in part due to sporadic work record, reflecting relatively low earnings and multiple years with no reported earnings, and thereby pointing to potential lack of

motivation to work); Ramirez v. Barnhart, 292 F.3d 576, 582 (8th Cir. 2002) (same); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000) (holding that the plaintiff's failure to stop smoking despite being advised by his doctor to stop was properly considered by the ALJ in discounting the plaintiff's allegations of disabling respiratory problems); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (holding that allegations of disabling pain were properly discredited where the claimant had received minimum medical treatment and only occasional pain medications).

As noted above, the ALJ twice characterized the record as devoid of any doctor's opinion that Plaintiff needed to restrict his activities due to any of his alleged impairments. This is not accurate, as Dr. Musser indicated in his June 23, 2003 disability evaluation that Plaintiff had a disability, expected to last 6 to 12 months, which prevented him from engaging in employment. The ALJ did not mention this report at all. The Court, however, does not believe that this undermines the validity of the ALJ's decision. Dr. Musser examined Plaintiff one time on a consultative basis and his report is vague and conclusory with no supportive explanations, clinical findings, or laboratory tests. In addition, the checklist format, generality, and incompleteness of Dr. Musser's assessment limits its evidentiary value. See Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). As such, the Court concludes that the ALJ was entitled to discredit this opinion. Cf. Bauter v. Barnhart, 94 Fed. Appx. 419, 420, 2004 WL 605238, at *1 (8th Cir. 2004) (holding that the ALJ properly discredited opinion of consulting physician who examined plaintiff only once for purpose of state disability benefits, and who rendered conclusory

opinion that the plaintiff had a disability of unspecified duration). The Court further notes that Dr. Musser believed Plaintiff's disability would last from 6 to 12 months, a duration just short of that required for a condition to qualify as a disability under the Social Security Act.

No other treating or examining physician imposed any exertional restrictions on Plaintiff and this lends support to the finding that Plaintiff was not disabled. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that lack of restrictions imposed by physicians supported ALJ's decision that the plaintiff was not disabled). The Court also notes that while Plaintiff repeatedly testified at the hearing that he had high blood pressure causing him to be lightheaded, the record contains little evidence that Plaintiff had high blood pressure, no doctor of record ever identified high blood pressure as a problem, and Plaintiff points to no evidence of any treatment he received for high blood pressure.

Plaintiff's argument that the ALJ failed to consider the combined effects of Plaintiff's impairments is also without merit. It is true that an ALJ must consider a claimant's impairments in combination. See 20 C.F.R. § 404.1523; Anderson v. Heckler, 805 F.2d 801, 805 (8th Cir. 1986). However, if the ALJ discusses each of the claimant's impairments and concludes that none render the claimant disabled, no further analysis is required. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." Id. Here, as noted above, after addressing each of Plaintiff's alleged impairments, the ALJ

concluded that Plaintiff's "allegations of symptoms precluding all types of work are not consistent with the evidence as a whole and are not credible." Tr. at 14. The ALJ's decision presents an adequate articulation of his thought process and reasons for rejecting Plaintiff's allegations of disabling impairments. See Browning, 958 F.2d at 821.

In sum, the Court concludes that deference to the ALJ's credibility determination is warranted. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) (stating that deference to ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence).

**ALJ's Reliance upon the Guidelines and Duty to Develop the Record**

Plaintiff argues that the testimony of a vocational expert was required to identify specific jobs that Plaintiff could perform. In the main, Plaintiff asserts that his nonexertional limitations required resort to such an expert. Upon review of the record, and in light of the above conclusion that the ALJ was entitled to discredit Plaintiff's subjective allegations of disabling impairments, the Court concludes that the ALJ properly concluded that Plaintiff was not disabled, based upon the Guidelines. See e.g., McGeorge v. Barnhart, 321 F.3d 766, 768-69 (8th Cir. 2003) (holding that an ALJ may use the Guidelines if the record supports the ALJ's finding that nonexertional impairment did not diminish the claimant's RFC to perform the full range of activities in a work category).

The suggestion in the passage from a case quoted by Plaintiff on the last page of his brief, holding that reliance upon the Guidelines is inherently unfair because it does

18

not allow a claimant to address his ability to perform specific jobs, was rejected by the Supreme Court in Heckler v. Campbell, 461 U.S. 458, 470 (1983).

Plaintiff also argues that the ALJ was remiss in not inquiring "conscientiously and fully into relevant facts" at the hearing, and that had the ALJ done so, he would have concluded that Plaintiff was unable to perform light work. Certainly there is much in the record to support Plaintiff's ability to do light work. On a form submitted in conjunction with his application for benefits, Plaintiff indicated that he was able to do laundry and dishes, make beds and change sheets, vacuum, take out the trash, rake leaves, and go to the post office. Tr. at 84. As noted by the ALJ, Plaintiff also stated at the hearing that he could lift and carry 50 pounds, and did not know how much he could lift and carry regularly. Tr. at 175. The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

The Court recognizes an ALJ's independent duty to fully and fairly develop the record in a Social Security disability case, and that "[s]uperficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations." See Cunningham v. Apfel, 222 F.3d 496, 502 n.6 (8th Cir. 2000). Although the ALJ's duty to develop the record exists even if a claimant is represented by counsel, it bears mentioning that

Plaintiff was represented by counsel at the hearing. The bulk of the examination was conducted by Plaintiff's counsel, and neither the record nor Plaintiff suggests any specific areas of inquiry that were not adequately developed at the hearing. Accordingly, the Court concludes that Plaintiff's argument on this point is without merit. Cf. id. at 502 & n.6 (holding that in light of testimony that should have alerted the ALJ to the plaintiff's mental limitations, the ALJ erred in failing to pursue questioning that would have revealed the extent of these limitations); Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (same where hearing lasted only ten minutes).

## CONCLUSION

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

The parties are advised they have eleven (11) days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.

AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated on this 13th day of October, 2006.